## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARIO SCOTT,

      Plaintiff,

v.                                                                  Case No: 8:19-cv-1363-CEH-SPF

UNITED PARCEL SERVICE,

      Defendant.

_____/

## <u>ORDER</u>

      In this employment discrimination and retaliation action, Plaintiff Mario Scott ("Plaintiff" or "Scott") sues his employer Defendant United Parcel Service ("Defendant" or "UPS") for alleged violations of Florida's Civil Rights Act. This matter is before the Court on Defendant UPS's Motion for Summary Judgment (Doc. 26), Plaintiff Scott's response in opposition (Doc. 30), UPS's reply (Doc. 31), and the parties' Joint Stipulation of Agreed Material Facts (Doc. 29). Upon due consideration of the parties' submissions, including deposition transcripts, affidavits, memoranda of counsel and accompanying exhibits, and for the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 26) will be granted.

## I.    BACKGROUND[1]

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the parties' Joint Stipulation of Agreed Material Facts (Doc. 29). For purposes of summary judgment, the Court presents the facts in the light most favorable to the non-moving party as required by Fed. R. Civ. P. 56.

### A.    Undisputed Facts[2]

UPS is the world's largest package delivery company, employing more than 400,000 employees in the United States and transporting more than five billion packages annually to more than 220 countries and territories. Scott began his employment with UPS in October 2011 as a temporary peak season employee. At all times relevant to his claims, Scott has been employed in UPS's Tampa Bayside small package center. UPS is a unionized company that is organized by the International Brotherhood of Teamsters. The employment of UPS's bargaining unit employees, including Scott, is subject to the terms and conditions of UPS's collective bargaining agreement (CBA) and applicable supplement. The CBA dictates that newly hired bargaining unit employees must complete a thirty-working-day "probationary" period before obtaining seniority. Scott completed his probationary period in early 2012. At that time, he obtained "seniority" under the CBA and earned a position on the company's regular seniority list.

Scott's seniority date is January 4, 2012. After obtaining seniority on January 4, 2012, Scott moved into a part-time Preloader position in the Tampa Bayside Center. Throughout the time periods relevant to his claims, Scott has worked under the management of Tom Teimer, who is white, the Tampa Bayside Center Business Manager, and supervisors Justin Drew, who is white, and Marvin McGruder, who is African American. Scott is African American.

---

[2] These facts are taken from the parties' Joint Stipulation of Agreed Facts. Doc. 29.

2

Each UPS small package center, including the Bayside Center, operates a fleet of "package cars"—the company's iconic brown delivery vehicles. These package cars are driven by UPS's Package Car Drivers. Package Car Drivers' responsibilities generally include delivering packages to, and retrieving packages from, the company's customers. UPS's package centers typically handle a far higher volume of packages during the year-end holiday season, known as the "peak" season. During this peak season, certain employees may be offered the opportunity to work longer hours or temporarily fill new roles to ensure packages are delivered timely. UPS's small package centers often need additional Package Car Drivers to meet delivery needs during a peak season.

UPS's CBA requires that vacant bargaining unit positions be posted internally for interested employees to "bid" on. In anticipation of higher volume expected during the 2017 peak season, one such bid list was posted in the Tampa Bayside Center on September 19, 2017. The September 19, 2017 bid list offered bargaining unit employees the opportunity to bid for a peak season Saturday Air Driver position. Employees Johane Moultin, Anthony Cantu, Scott, and Victor Torres bid on and were selected to fill Saturday Air Driver positions for the 2017 peak holiday season.

Ms. Moultin is African American with a seniority date of August 14, 2006. Mr. Cantu is Hispanic with a seniority date of July 12, 2011. Driver candidates must also obtain a Department of Transportation ("DOT") card, complete certain required training and satisfy other requirements. Before working as Saturday Air Drivers, Scott, Moultin, Cantu, and Torres were only required to complete a three-day training course

3

offered locally within the Tampa area, among other training prerequisites. All four completed the abbreviated local course and were permitted to drive peak season Air routes on an as-needed basis.

During the 2017 peak season, Teimer needed extra assistance with delivery of Ground packages out of the Bayside Center. Teimer confirmed with UPS's Labor Manager that allowing qualified employees to deliver Ground packages, as well as Air packages, complied with the CBA. After expressing this interest, Scott was also approved to deliver Ground packages as needed during the 2017 peak season. Scott ultimately worked as a Package Car Driver on at least twelve days during the month of December 2017. In January 2018, Scott returned to his part-time Preloader position.

In early 2018 several full-time Package Car Driver positions came open in the Bayside Center. Scott signed a Bid Acknowledgement on January 9, 2018, acknowledging that he had been offered to bid for a full-time Package Car Driver position.

UPS's week-long Integrad courses are more detailed and rigorous than the abbreviated training sessions held for peak season drivers. Scott's Bid Acknowledgement expressly told him he would be required to "attend ... the driver school," and that he was required to complete all requirements before obtaining a full-time position. In early January 2018, Human Resources Representative Desiree Garcia notified Scott by text message that he, Torres, and other full-time driver candidates would be required to complete a week-long training course. Both Scott and Torres were required to complete the week-long Integrad course as a condition of their

4

bid for a full-time Package Car Driver position. Scott and Torres, as well as others, were assigned to attend the Integrad course held at UPS's Lake Mary, Florida facility in late January 2018.

UPS's Integrad instructors conduct daily uniform and appearance inspections. After each daily inspection, Integrad instructors explain all Appearance Guidelines violations they have observed and give specific instructions to attendees on how to correct these issues. On January 22, 2018, Scott was warned that he needed to wear a plain black or brown leather belt to pass uniform inspection. On the evening of January 22, 2018, Scott and Torres drove to a store to purchase new clothing items. On January 23, 2018, the second day of the class attended by Scott and Torres, Scott was not wearing a plain black or brown leather belt but was, instead, wearing a worn and braided belt. On January 24, 2018, Torres completed his uniform inspection with no Appearance Guidelines violations. Scott was disqualified from continued participation in the Integrad course due to his failure to pass uniform inspections on January 22, 23, and 24, 2018. After being disqualified from Integrad training, Scott returned to his part-time Preloader position. In mid-February 2018, Scott was offered another chance to attend the Integrad training course. Scott voluntarily declined the chance to attend the February 2018 Integrad course. Scott completed the required training many months later and, as of January 2020, has been promoted to a full-time Package Car Driver, a position he still holds today. On March 29, 2018, Scott filed a charge of discrimination with the EEOC.

**B.     Procedural Background**

In May 2019, Scott filed a two-count Complaint against UPS in state court alleging state law claims for violations of Florida's Civil Rights Act. UPS removed the action to this Court on June 4, 2019. Doc. 1. The Court has jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship and an amount in controversy that exceeds $75,000.[3] Before the Court is UPS's motion for final summary judgment against Scott on all claims. Doc. 26. In support, UPS submits several documents: excerpts of Scott's deposition (Doc. 26-1); excerpts of Scott's employee history file (Doc. 26-2); declaration of UPS's Labor Relations Manager Fred Dore (Doc. 26-3); excerpts of the UPS Collective Bargaining Agreement ("CBA") (Doc. 26-4); declaration of UPS's Tampa Bayside Center manager Tom Teimer (Doc. 26-5); September 19, 2017 Part Time Employee bid sheet for Saturday Air driver positions (Doc. 26-6); declaration of UPS's Human Resources Manager for the Tampa Bayside Center Osiris Sanchez (Doc. 26-7); Scott's UPS pay history reports for the pay period ending December 2, 2017 through pay period ending January 6, 2018 (Doc. 26-8); Scott's EEOC Charge of Discrimination (Doc. 26-9);   January 9, 2018 Bid Acknowledgement signed by Scott (Doc. 26-10); declaration of UPS site manager for Integrad training facility Chrissy Teresi (Doc. 26-11); declaration of UPS facilitator at Integrad training facility John Freiwald (Doc. 26-12);   UPS Driver Uniform and Personal Appearance Guidelines (Doc. 26-13); excerpts from UPS employee policies

---

[3] UPS is a citizen of Ohio where it is incorporated and of Georgia where it has its principal place of business. Scott is a citizen of Florida.

(Doc. 26-14); information for UPS employees attending Integrad training course in Lake Mary, Florida (Doc. 26-15); guidelines for employees attending UPS corporate school at Integrad Facility (Doc. 26-16); uniform inspection sheet dated January 22, 2018 (Doc. 26-17); John Freiwald's January 24, 2018 statement regarding Scott's uniform inspection disqualification (Doc. 26-18); uniform inspection sheet dated January 23, 2018 (Doc. 26-19); uniform inspection sheet dated January 24, 2018 (Doc. 26-20); EEOC Notice of Right to Sue dated August 7, 2018 (Doc. 26-21); Victor Torres's employee history record with seniority date (Doc. 26-22); photograph of belt Scott was wearing on January 24, 2018 (Doc. 26-23); text messages between Scott and Desiree Garcia regarding five-day training class in Lake Mary (Doc. 26-24); and declaration of UPS Human Resources Supervisor for Tampa Bayside Center Desiree Garcia (Doc. 26-25).

Scott opposes UPS's motion, arguing disputed questions of material fact preclude summary judgment. Doc. 30. In opposition to the motion, Scott files a copy of the National Master UPS Freight Agreement (Doc. 30-1); Bayside Unloader A.M. Seniority list dated January 9, 2018 showing Scott's seniority date as January 4, 2012 (Doc. 30-2); the declaration of Scott (Doc. 30-3); Bayside Preloader Seniority List dated January 9, 2018 showing Victor Torres's seniority date as February 20, 2012 (Doc. 30-4); December 1, 2017 Grievance to the Teamsters Local Union No. 79 submitted by Scott (Doc. 30-5); Bayside Preloader Seniority List dated January 9, 2018, in which Victor Torres's seniority date of February 20, 2012 is crossed out and January 4, 2012 is hand written in (Doc. 30-6); Teamsters Report on disposition of

Scott's Grievance (Doc. 30-7); Plaintiff's response to UPS's request for admissions (Doc. 30-8); Scott's February 5, 2018, Grievance to the Teamsters Local Union No. 79 regarding violation of January 24, 2018 (Doc. 30-9); July 9, 2018 letter from Teamsters Local Union No. 70 forwarding Scott's letter of concern (Doc. 30-10); EEOC Right to Sue Letter dated August 7, 2018 (Doc. 30-12); and excerpts of Scott's deposition (Doc. 30-13). UPS replied (Doc. 31) to Scott's opposition and submitted Plaintiff's responses to Defendant's request to produce (Doc. 31-1). The motion is ripe for the Court's consideration.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence

present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

## III.   DISCUSSION

Scott sues his employer, UPS, for violations of Florida's Civil Rights Act, alleging discrimination and retaliation based on his race.

### A.   Disparate Treatment Claim Based on Race – Count I

In Count I, Scott asserts that UPS denied him the opportunity to become a full-time Package Driver because of his race. He alleges that Victor Torres, a non-black co-worker with less seniority, was treated more favorably because he was permitted to become a full-time driver after attending only one driving course. Scott alleges he was required to attend a second driving course and then was flunked from the course for subjective reasons. Doc. 1 at 12.

Under Florida law, it is unlawful for an employer to discharge an individual or otherwise discriminate against any individual "with respect to compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status." § 760.10(1)(a), Fla. Stat. "Florida courts have held that decisions construing Title VII

9

are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing *Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So.2d 1005, 1009 (Fla. 1989)).

In its motion, UPS argues that Scott fails to establish a *prima facie* race discrimination claim based upon disparate treatment. The Court agrees. To establish a *prima facie* claim for disparate treatment under Title VII, a plaintiff must show that: "(1) [he] is a member of a protected class; (2) [he] was qualified for the position; (3) [he] suffered an adverse employment action; and (4) [he] was treated less favorably than a similarly-situated individual outside [his] protected class." *Arafat v. Sch. Bd. of Broward Cty.*, 549 F. App'x. 872, 874 (11th Cir. 2013) (citing *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003)).

Here, there is no evidence of racial slurs or other direct evidence of discrimination. Thus, in the absence of direct evidence, a plaintiff may prove discrimination through circumstantial evidence, using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In its motion, UPS primarily challenges the third and fourth elements of a *prima facie* claim. If Plaintiff can satisfy all four elements of his claim, the burden shifts to Defendant to provide a legitimate, nondiscriminatory reason for its action. *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). If this burden is met, Plaintiff must

then prove that the Defendant's stated reasons are a pretext for unlawful discrimination. *Id.*

### 1.    Scott not Treated less Favorably than Torres

UPS asserts that Scott cannot demonstrate he was treated less favorably than his purported comparator, Victor Torres. Rather, UPS submits that the two employees were treated identical, and thus Plaintiff's claim fails because he is unable to direct the Court to any evidence that he was treated less favorably than a similarly situated individual outside his protected class. Both employees had to attend the three-day training course and obtain a DOT card to become a part-time peak driver and attend the more rigorous weeklong course, along with other requirements, to become a full-time driver. Doc. 26-5 ¶¶ 7, 9.

Scott's initial theory in his Complaint was he was treated less favorably because Torres was permitted to become a full-time driver after attending only one driving course whereas Scott had to take a second course. The undisputed evidence shows, however, that both Scott and Torres attended the second weeklong course at Integrad. Doc. 29 ¶ 37. Therefore, this alleged basis does not support a claim of disparate treatment because both employees were required to take both driving courses.

In his response to the motion for summary judgment, Scott clarifies his theory by asserting that Torres, as the less senior employee, was permitted to be an Air Driver as soon as he passed the first course, whereas Plaintiff did not get to become a driver until he filed a grievance on November 25, 2017. Scott's grievance dated November 25, 2017, states "his seniority was violated by management allowing junior employee

Victor Torez (sic) to perform Air and ground work." Doc. 30-5.[4] Plaintiff submits that because he has greater seniority than Torres, he should have been given a driver position before Torres. UPS contends that the seniority date for both employees is the same—January 4, 2012. Additionally, both completed the three-day driving course in 2017, obtained their DOT cards the same day, and began driving on a part-time basis during the 2017 peak season. Doc. 26-5 ¶ 8. Further, as UPS points out, Scott fails to proffer any evidence of how often Torres drove during the peak season.

According to Plaintiff, this case turns on Torres's seniority date of which he asserts there is a disputed question of fact precluding summary judgment. However, viewing all facts in a light most favorable to Scott, the evidence supports that Scott and Torres had the same seniority date.

In support of his position that he had greater seniority than Torres, Plaintiff relies on two exhibits (Docs. 30-4, 30-6) that he contends create a disputed issue of material fact as to Torres's seniority date. Exhibit 4 to Scott's response is a document titled "Bayside Preloader Seniority List." Doc. 30-4. The document is dated January 9, 2018 and reflects a seniority date for Torres of February 20, 2012. Scott argues this document was the list posted in the Bayside Center per the terms of the bargaining

---

[4] UPS objects to the Court's consideration of the grievance form relied upon by Scott as not having been produced in discovery. Doc. 31 at 9. However, the Court notes UPS does not challenge Plaintiff's Exhibit 7 which is the Union's report of its response to the grievance (Doc. 30-7). Moreover, Scott's charge of discrimination references he filed a grievance (Doc. 26-9) and Scott testified to filing a grievance (Doc. 30-13 at 10). Thus, construing facts in a light most favorable to Scott, the Court accepts that Scott made a complaint or grievance at the start of the 2017 peak season that Torres was permitted to drive before him.

agreement. Additionally, Scott argues that after he filed his grievance on November 25, 2017, someone altered Torres's seniority date striking through the February 20, 2012 seniority date and writing in the date January 4, 2012. *See* Doc. 30-6. As argued in UPS's reply, Scott does not identify who prepared these documents, who altered the documents, or otherwise, who can authenticate them. Scott did not depose any UPS representative or employee regarding the documents or Torres's seniority date. In his declaration, Scott states that seniority rankings are to be posted in a prominent location at the Bayside Center. Doc. 30-3. He "distinctly recall[s] that Victor Torres's seniority date was in February 2012, which was after [Scott's] seniority date." *Id.* ¶ 6. Scott also argues that inconsistencies in UPS's own documentation supports that there is a disputed question of fact regarding Torres's seniority date. Doc. 30 at 15 (citing UPS's exhibit at Doc. 26-6 which lists seniority dates for both Torres and Scott as January 3, 2012).[5] However, other than his recollection, Scott offers no admissible evidence that Torres had less seniority than Scott.

For its part, UPS submits employment time records for Scott (Doc. 26-2 showing a hire date of January 4, 2012) and Torres (Doc. 26-22 showing an effective date of January 4, 2012). Additionally, it submits the declarations of Tom Teimer, Business Manager in UPS's Tampa Bayside Center (Doc. 26-5 ¶ 9); and Fred Dore, UPS's Labor Relations Manager (Doc. 26-3 ¶ 12), stating Scott and Torres both have

---

[5] Scott disputes that Torres's seniority date is January 3, 2012, but he cites to the Defendant's exhibit referencing such as being inconsistent with what UPS argues in its motion. Doc. 30 at 15. This argument is unpersuasive as the document still shows both Scott and Torres having the same seniority date.

UPS seniority dates of January 4, 2012.  UPS's Human Resources Manager, Osiris Sanchez, provides a declaration stating Torres's seniority date is January 4, 2012.[6] Doc. 26-7 ¶ 6. The parties have jointly stipulated that Scott's seniority date is January 4, 2012.[7] Doc. 29 ¶ 8.

Rule 56(c)(2), Fed. R. Civ. P., provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible. As pointed out in UPS's reply, Scott proffers no admissible evidence that his seniority date is superior to that of Torres. The seniority lists Scott proffers, purportedly showing Torres's seniority date to be February 20, 2012, have not been authenticated. Scott did not offer any testimony or declaration from a UPS employee or union representative as to the authenticity of the "seniority lists" he attaches to his response as exhibits 4 and 6 (Docs. 30-4 and 30-6), nor has he demonstrated that any exception to the hearsay rule would apply to these documents. And UPS has denied they accurately reflect Torres's seniority date and has submitted its own authenticated documents that Torres's seniority date is January 4, 2012. Docs. 26-5 ¶ 9; 26-3 ¶ 12; 26-7 ¶ 6; 26-22 Thus, the Court concludes that the unauthenticated exhibits proffered by Scott do not create a disputed issue of fact in the face of the authenticated personnel

---

[6] The Sanchez declaration indicates Scott had a seniority date of July 4, 2012 (Doc. 26-7 ¶ 6) but considering the parties' stipulation (Doc. 29 ¶ 8) that Scott's seniority date is January 4, 2012, the Court accepts the date of Scott's seniority as January 4, 2012, which is undisputed by the parties.
[7] Additionally, Scott's declaration asserts his seniority date is January 4, 2012. Doc. 30-3 ¶ 5.

records and testimony from UPS representatives that Torres and Scott had the same seniority date of January 4, 2012.

At most, Scott proffers his recollection that Torres's seniority date was in February 2012. Scott's unsupported recollection, however, does not create a disputed issue of a material fact. Thus, Scott fails to establish a *prima facie* case of disparate treatment because he cannot show that he was treated less favorably than a similarly situated individual outside his protected class. *See Arafat*, 549 F. App'x at 874.

### 2.    Adverse Employment Action

Even if Scott was able to show that a disputed question of fact exists as to Torres's seniority date, Scott fails to show he suffered an adverse employment action because of it. The record evidence shows that Scott worked as a package car driver at least twelve days during the 2017 peak season. Doc. 29 ¶ 30. Scott proffers no evidence to show how many days Torres drove or that Torres drove significantly more than Scott. Scott submits the 2019 finding of the union grievance committee that awarded him an additional four and one-half hours of compensation at the air rate of $13.50 per hour in response to his November 25, 2017 grievance. Doc. 30-7.  Construing this evidence in a light most favorable to Scott, he received payment for an additional four and one-half hours of time to compensate him for extra hours that Torres was permitted to drive before Scott during the 2017 peak season.

Although the Eleventh Circuit recognizes that actions that affect compensation may be considered "adverse employment actions," the court clarified the action must be more than *de minimus*. *See Embry v. Callahan Eye Found. Hosp.*, 147 F. App'x 819,

15

829 (11th Cir. 2005) (holding that the loss of the amount equivalent to plaintiff's one-day suspension did not constitute a "serious and material change in the terms, conditions, or privileges of employment" to be an adverse employment action) (citations omitted). Thus, even if Torres was given four and one-half hours of drive time before Scott, such does not establish that Scott was subjected to an adverse employment action by Torres being permitted to drive first and receiving four and one-half more hours of drive time than Scott. And, in any event, Scott does not assert he never received the additional compensation for those four and one-half hours, and therefore it appears he suffered no adverse consequences.

As noted above, to the extent that Scott claims disparate treatment due to having to attend a second training course when Torres did not, the undisputed facts demonstrate both Scott and Torres were required to attend the second training course held in Lake Mary. *See* Doc. 26-1 at 28;[8] *see also* Doc. 29 ¶ 37. As for Scott's disqualification from the course, the record reflects that he was disqualified for race-neutral appearance guideline violations that Torres did not have by day three of the Integrad course. *See* Docs. 26-12, 26-17, 26-18, 26-19, 26-20. Although Torres had appearance guideline violations on days one and two of the training course, Torres was in compliance with the appearance guidelines by day three of the course. On day three Scott still had an appearance guideline infraction regarding his belt. *Id.* Thus, no evidence reflects that Scott was treated less favorably than Torres regarding training

---

[8] Doc. 26-1 consists of excerpts from Scott's deposition. The Court references the documents by cm/ecf page number.

16

class requirements to become a full-time UPS driver. Nor was his required attendance at the second training course an adverse consequence. While his disqualification from the course could be considered an adverse consequence, Scott cannot establish that he was treated less favorably than a similarly situated comparator because his alleged comparator Torres did not have the appearance violation that Scott did by the third day of the course. *See* Doc. 26-20. Thus, UPS is entitled to final summary judgment in its favor as to Scott's discrimination claim in Count I because Scott fails to establish a *prima facie* case of disparate treatment.

### B.    Retaliation – Count II

In Count II of Scott's Complaint, he asserts that he engaged in protected activity by complaining to management and filing an internal grievance after he was not given driving assignments upon completion of the initial driving course when Torres, an employee with less seniority, was permitted to drive before him. He alleges a causal nexus exists between his complaints and how he was "kicked out of the driving school for contrived and baseless reasons."[9]

The anti-retaliation provision of Title VII forbids retaliation against an employee who has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). Because Scott relies on circumstantial evidence to attempt to prove his retaliation claim, the Court first

---

[9] Scott alleges in his Complaint that he was retaliated against by being required to attend the second driving course. Doc. 1 at 13 ¶¶ 26, 27. Scott appears to have abandoned this theory. Doc. 30 at 18.

addresses his claim under the *McDonnell Douglas* burden-shifting framework. *Smith v. Lockheed–Martin, Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–05). To make a *prima facie* case for retaliation, the plaintiff must show: 1) a statutorily protected expression; 2) an adverse employment action; 3) a causal link between the protected expression and the adverse action. *Jones v. Gulf Coast Health Care of Del.*, 854 F.3d 1261, 1272 (11th Cir. 2017) (Title VII); *Shedrick v. Dist. Bd. of Trustees of Miami-Dade College*, 941 F. Supp. 2d 1348, 1365 (S.D. Fla. 2013) (reciting the same elements for a retaliation claim under the FCRA). Florida courts follow federal case law when examining Florida Civil Rights Act retaliation claims.[10] *See Carter v. Health Mgmt. Assocs.*, 989 So. 2d 1258, 1262 (Fla. 2d DCA 2008).

### 1.    Statutorily Protected Expression

In its motion, UPS argues that Scott fails to establish a *prima facie* case of retaliation because he cannot show he engaged in statutorily protected activity. But assuming he did lodge a complaint,[11] UPS argues that nothing in Scott's grievance

---

[10] The retaliation provision of the FCRA provides:

> It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

Fla. Stat. § 760.10 (2015).

[11] UPS disputes that Scott made a complaint during the relevant time frame, but for purposes of the motion for summary judgment, UPS assumes a driver-related complaint was made. Doc. 26 at 18 n.9.

evinced a concern or complaint of discrimination. Doc. 26 at 19. Rather, UPS contends that Scott's generalized complaint about work assignments is insufficient to be characterized as engaging in protected activity under the FCRA. Scott responds that UPS is reading Title VII and the FCRA too narrowly and that the Court should infer that his complaint regarding Torres, an employee of a different race who had less seniority and was permitted to drive before him, constituted a complaint of discriminatory conduct.

Statutorily protected activity includes: (1) opposing any practice made an unlawful employment practice by Title VII and (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e–3(a); *see EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). To establish that a plaintiff engaged in statutorily protected expression under Title VII, a plaintiff must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311–12 (11th Cir. 2002) (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Plaintiff's burden to show that he engaged in statutorily protected expression has both a subjective and an objective component. *Id.* A plaintiff must not only show that he subjectively, in good faith, believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable considering the facts and record. *Id.* And to show that plaintiff engaged in statutorily protected expression for purposes of establishing a retaliation claim under Title VII, it is not enough for plaintiff to allege

that his belief that his employer was engaged in unlawful employment practices was honest and bona fide. *Id.* The allegations and record must also indicate that the belief, even if mistaken, was objectively reasonable. *Id.*

In a light favorable to Scott, his November 2017 grievance is silent as to any alleged discriminatory conduct. The grievance states "his seniority was violated by management allowing junior employee Victor Torez (sic) to perform Air and ground work." In his declaration, Scott states he filed a grievance "because I felt that Victor Torres was being treated better than I was being treated." Doc. 30-3 ¶ 9. But he fails to direct the Court to any evidence to support his claim that his grievance related to alleged discriminatory treatment. The only evidence of record on the issue is the declaration of Teimer, business manager for UPS's Tampa Bayside Center, who states that Scott never complained to Teimer that he was being discriminated against based on race or skin color regarding the 2017 peak season driving assignments. Doc. 26-5 ¶ 12. Thus, Scott fails to show he engaged in statutorily protected conduct.

### 2.    Causal Link

Scott points to nothing in the record to support that his November 25, 2017 grievance or any verbal complaint he made to Teimer had anything to do with his race.[12] Teimer specifically states that Scott never complained that he believed he was

---

[12] Teimer denies that Scott filed a grievance complaining he was denied the opportunity to deliver ground packages during the 2017 peak season. Doc. 26-5. It is unclear whether Teimer is denying that any complaint was made or that there was no complaint of being denied the opportunity to deliver ground packages. In any event, it is clear that Teimer states Scott never complained of discrimination based on his race. *Id.* ¶ 12.

being discriminated against because of his race. Doc. 26-5 ¶ 12. And there is no evidence from which the Court can objectively infer that Torres being permitted to drive before Scott was due to Scott being African American.[13] Even if he could establish that he engaged in statutorily protected activity, however, Scott cannot demonstrate that his disqualification from the second driving course was causally related to any purported protected activity.

"The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. . . . However, temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart v. BellSouth Telecomms.*, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (internal citations omitted). Here, UPS has provided unrebutted declarations from the Lake Mary instructors—those who made the decision to disqualify Scott from the Integrad course—that they had no knowledge of Scott's prior grievances or complaints at the Tampa Bayside Center. Docs. 26-11, 26-12. Scott, on the other hand, proffers no evidence to demonstrate the Integrad instructors knew of any prior complaints made by him. He offers only speculation, arguing that because Desiree Garcia was at the Integrad driving school,

---

[13] The Court notes that Scott does not even try to alternatively establish a *prima facie* case using statistics. *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1131 (11th Cir. 1984) ("[S]tatistics can be relevant and important in an individual case. . . . But statistics alone cannot make a case of individual disparate treatment.") (internal citations omitted).

"it is not a far reach to conclude that she likely discussed the Plaintiff's past protected activity." Doc. 30 at 21.

The record evidence supports that Scott was disqualified for failing to be in compliance with the Uniform and Personal Appearance Guidelines by the third day of the course. Doc. 26-12. There is no evidence that his disqualification was related to his race or any complaint or grievance he made to the union or the Tampa Bayside Center. Indeed, the record supports that during the first six months of 2018 alone, at least eleven employees of various races and ethnicities were disqualified from courses conducted at the Lake Mary facility due to Appearance Guideline violations. Doc. 26-11 ¶ 9. Thus, Scott fails to establish a *prima facie* case of retaliation because he cannot show he engaged in statutorily protected expression or that there was a causal link between any purported expression and his being disqualified from the Integrad driving course.

### C.  Burden-Shifting Framework

Even if Scott could satisfy the elements of a *prima facie* claim, the burden then shifts to UPS to provide a legitimate, nondiscriminatory reason for its action. *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). If this burden is met, Plaintiff must then prove that the Defendant's stated reasons are a pretext for unlawful discrimination. *Id.* Here, Scott contends UPS discriminated and retaliated against him by kicking him out of the Integrad training course. UPS responds that Scott's disqualification was due to his failure to comply with the Appearance Guidelines required of all course attendees and not for any discriminatory purpose.

22

Scott was disqualified from the Integrad course for failing the appearance guideline requirements three days in a row. Docs. 26-12; 26-17; 26-18; 26-19; 26-20. While Torres had appearance guideline violations on day one and two of the training course, Torres was in compliance by day three of the course whereas Scott still had an appearance guideline infraction regarding his belt. *See* Docs. 26-12, 26-17, 26-18, 26-19, 26-20. The undisputed evidence shows that Scott was disqualified from the course for race-neutral reasons, namely because he failed to comply with the appearance and uniform guidelines, which all attendees were expected to be in full compliance by the third day of the course. In support, UPS submits the unrebutted declaration of Chrissy Teresi, site manager for the Integrad training facility, who explains the importance and application of the Appearance Guideline requirements to all employees attending the course. Doc. 26-11 ¶ 6. She states because Scott failed to pass a uniform and appearance inspection by the third day of the course, he was disqualified from the course as of that day. *Id.* ¶ 7.

Thus, even if Scott could establish a *prima facie* case of discrimination or retaliation, which the Court has not found, UPS has stated a legitimate, nondiscriminatory reason for its actions. According to Teresi, driving course attendees are informed of Appearance Guideline violations and told how to correct the issue. Doc. 26-11 ¶ 6. Attendees are warned that if they fail to correct all uniform or appearance issues by the third day of the course, they will be disqualified from the program. *Id*. UPS presents evidence of a legitimate non-discriminatory basis for disqualifying Scott from the Integrad driving course, namely he failed to comply with

23

the Uniform and Appearance guidelines. Despite being advised of the guidelines, Scott was noncompliant for the third day in a row and was disqualified from the course the third day because of his failure to comply with the requirement of wearing a plain black or brown leather belt. Docs. 26-12; 26-18. Scott's response is that UPS's reasoning is merely a pretext for discrimination because UPS was obligated to provide him with the uniform he was required to wear but failed to do so. Doc. 30-3 ¶ 13. John Freiwald, the Integrad facilitator who disqualified Scott, confirms that Scott told him on the first day of the driving course (after Freiwald noticed Scott was not wearing a belt) that Scott had ordered a belt from the HR rep, but he had not received it yet.[14] Doc. 26-18 at 2. On Monday, the first day of the course, Freiwald told Scott he needed a plain black or brown leather belt to pass inspection. *Id.*; *see also* Doc. 26-17 ("Plain Belt Blk/Brn"). Scott does not dispute he was told on the first day of the course that he needed to wear a plain black or brown leather belt to pass uniform inspection. Doc. 29 ¶ 41. Freiwald told Scott he should procure a belt himself (and not necessarily wait for HR) so that he would have one by Wednesday, the third day of the course. Doc. 26-18 at 2. Despite these warnings and Scott admittedly going shopping on the evening of the first day of the class to get clothing items (Doc. 30-3 ¶15; 29 ¶ 42), he showed

---

[14] Human Resources Supervisor Desiree Garcia states that prior to departing for the Integrad course in Lake Mary, Scott never told her, or anyone else in her department, that he was missing any part of his uniform. Doc. 26-25 ¶ 3. Scott declares that he "discussed the belt issue with Desiree Garcia who was in attendance at the Integrad Course." Doc. 30-3 ¶ 14. It is unclear from Scott's declaration as to when the conversation with Garcia occurs. However, it is undisputed that Freiwald told Scott he should procure the belt in time for the third day of the course and not wait for HR to get him a belt. Doc. 26-18 at 2.

up to the course on Wednesday with a noncompliant belt. Doc. 23. Scott admitted to Freiwald that he borrowed the belt from another classmate and did not get it from him until that morning.  Doc. 26-18 at 2. Nothing about these facts suggests that Scott's disqualification from the course for uniform noncompliance was a pretext for discrimination, particularly in light of the fact that at least eleven employees (including Plaintiff) of various races and ethnicities were disqualified from courses conducted at the Lake Mary facility in the first half of 2018 due to Appearance Guidelines violations and/or unacceptable uniform violations. Doc. 26-11 ¶ 9.

## IV.    CONCLUSION

The Court finds no unlawful discrimination or retaliation, but even if Scott could establish a *prima facie* case, UPS has provided a legitimate, nondiscriminatory reason for Scott's disqualification from the Integrad driving course and Scott fails to show the reason given was a pretext for discrimination. As no genuine issues of material fact exist, UPS is entitled to summary judgment in its favor on Scott's discrimination and retaliation claims under the Florida Civil Rights Act. Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

1.    Defendant's Motion for Summary Judgment (Doc. 26) is **GRANTED**.

2.    The Clerk is directed to enter a judgment in favor of Defendant United Parcel Service and against Plaintiff Mario Scott.

3.    The Clerk is further directed to terminate any pending motions and deadlines and close this case.

**DONE AND ORDERED** in Tampa, Florida on September 28, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any